STATE OF NEBRASKA, APPELLEE, v. GARY S. WILSON, APPELLANT.

222 N. W. 2d 128

Filed October 10, 1974. No. 39438.

Michael C. Washburn of Leahy, Gergen, Washburn & Cavanaugh, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

The defendant appeals from a sentence to life imprisonment for murder in the perpetration of a robbery. The robbery involved is the same as in State v. Casper, ante p. 120, 219 N. W. 2d 226.

The robbery or attempted robbery took place at the Surfside Marina Club which is located near the Missouri River north of Omaha, Nebraska. After arriving at the club the defendant and Charles Casper held the victim,

Joseph Armstrong, on the ground and went through his clothing in an attempt to find $200 they knew Armstrong had in his possession.

The defendant testified that when he and Casper were unable to find the money in Armstrong's clothing, Casper told Armstrong he "was going for a swim" if he did not produce the money. The defendant tried to separate Casper and Armstrong and told Casper to leave Armstrong alone. The defendant then started walking to Casper's car and heard the splash. The defendant had told two police officers at the time of his arrest that Casper pushed Armstrong in the river. When last seen alive, Armstrong was into the river. His dead body was found floating in the river 10 days later.

A post mortem examination of Armstrong's body was made but the exact cause of death could not be determined from the examination. The pathologist who performed the autopsy testified his findings were consistent with drowning but it could not be determined from examination of the body alone that Armstrong had drowned. In response to a hypothetical question which assumed the victim had been pushed into the river with no other injuries, the pathologist testified it was "most likely" death was caused by drowning.

In a prosecution for homicide, the State may show by circumstantial evidence the cause of death was a criminal act of the defendant. State v. Casper, *supra*. The evidence in this case was similar to the evidence in State v. Casper, *supra,* and was sufficient to sustain a finding that Armstrong's death was caused by drowning.

The defendant contends instruction No. 10A which related to the defense of abandonment was erroneous. The instruction was as follows: "In order for a defendant who has conspired with another to commit a robbery to avoid responsibility for a homicide which occurs during the course of the robbery or attempted robbery, such defendant must have abandoned the criminal en-

terprise before the robbery or attempted robbery was in the course of consummation.

"The abandonment must be such as to show not only his determination to go no further but also such as to give his coconspirator a reasonable opportunity to follow his example and refrain from further action before the robbery is attempted.

"An aider and abettor, or conspirator, cannot escape responsibility for an act which is the natural result of a common scheme which he has helped to devise and to carry forward because as a result either of fear or even of a better motive he concludes to desist or flee at the very instant when the robbery which is about to be committed and when the transaction which immediately begets it has actually been commenced."

The defendant contends the second paragraph of the instruction was erroneous because it required abandonment to be complete before the robbery was attempted.

To be effective as a defense, there must be an appreciable interval between the alleged abandonment of the criminal enterprise and the act for which responsibility is sought to be avoided. The coconspirator must have a reasonable opportunity to follow the example and refrain from further action before the act in question is committed. A conspirator cannot escape responsibility for an act which is the natural result of a criminal scheme he has helped to devise and carry forward by running away at the instant when the act in question is about to be committed and the transaction which immediately begets it has actually been commenced. See, People v. Nichols, 230 N. Y. 221, 129 N. E. 883, Pollack v. State, 215 Wis. 200, 253 N. W. 560.

At the time Casper threatened to push Armstrong into the river, the robbery or attempted robbery had been in progress for some time with full participation by the defendant. The defendant does not claim that he made any effort toward abandonment of the crime until

Casper threatened to put Armstrong in the river and immediately started shoving him toward the bank. At the time defendant claims he withdrew, the transaction which resulted in the death of Armstrong was in the course of consummation and the act in question followed immediately.

There was no appreciable interval between the alleged abandonment and the act of Casper which forced Armstrong into the river. There was no reasonable opportunity for Casper to reflect on the defendant's alleged change of heart and refrain from proceeding further with the robbery or attempted robbery. Under the facts and circumstances in this case the instruction was not prejudicially erroneous.

The judgment of the District Court is affirmed.

AFFIRMED.